FILED
2021 Sep-20  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| GREGORY SIMMONS,<br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ US<br>INTERNATIONAL INC.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 7:19-cv-02123-LSC |

### MEMORANDUM OF OPINION

Plaintiff Gregory Simmons, an African American male, brings this action against his former employer, Mercedes-Benz U.S. International Inc. ("MBUSI"), in connection with MBUSI's decision to deny his application for short term disability leave ("STD leave") and the termination of his employment. Simmons alleges that each of MBUSI's adverse actions constitutes disability discrimination in violation of the Americans with Disabilities Act (Count I) as well as racial discrimination in violation of Title VII and Section 1981 (Count II). Before this Court is MBUSI's Motion for Summary Judgment as to both counts. (Doc. 32.) The motion has been fully briefed and is ripe for review. For the reasons stated below, MBUSI's motion is due to be granted.

I.     **Facts**

While employed by MBUSI, Simmons worked at the automobile assembly plant in Vance, Alabama within MBUSI's RampUp Logistics Department.[1] The RampUp Logistics Department is responsible for ensuring the availability of parts for all vehicle production trials. During the summer of 2018, three vehicles were in production trials. (Docs. 34-5 at 2 & 34-2 at 92.) Thus, the summer of 2018 was a very busy time for the RampUp Logistics Department.

In June of 2018, Simmons began experiencing pain in his left Achilles tendon for which he sought treatment with a podiatrist. (Doc. 34-2 at 93, 108.) Ankle pain was not foreign to Simmons as he had surgery on his Achilles tendon in 2017, for which he was out from work for approximately three months. (Doc. 34-2 at 52–53, 70.) To treat the 2018 injury, medical professionals created a treatment plan consisting of rest, immobilization, and handicap parking. (Doc. 34-2 at 110–11.)

While receiving treatment, Simmons stopped appearing for work. (Doc. 34-2 at 30, 92–93, 97–98.) Additionally, he applied for benefits with Social Security Administration, stating that he was "totally disabled" since his last date of work, June 19, 2018. (Doc. 34-3; Ex: 3, 4.) On July 25, 2018, Simmons requested and

---

[1] The Court gleans these "facts" from the parties' submissions of "undisputed facts" and the Court's examination of the record. These are "facts" for summary judgment purposes only. Their inclusion in this Memorandum of Opinion does not signal their veracity. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

received an STD leave application from MBUSI.[2] He submitted his application for STD leave on August 1, 2018.

MBUSI's STD leave policy provides up to 26 weeks of paid leave for employees with a short-term disability; an employee's leave application is either granted or delayed depending on the emergent nature of the need for leave and the business needs of MBUSI.

MBUSI's STD leave policy is administered by its plant medical department. If the Medical Department determines that an employee's request for STD leave is non-emergent, MBUSI may delay the STD leave for business needs. An employee's supervisor determines whether business needs permit non-emergent STD leave. If an employee's need for STD leave is emergent, MBUSI will grant the request.

Consistent with these procedures, upon receipt of Simmons's leave application, MBUSI sent the application to Simmons's supervisor, for approval. Due to business needs, Simmons's supervisor delayed the request for leave. Thereafter, MBUSI's Medical Department evaluated Plaintiff's medical documentation and

---

[2] To apply for STD leave, employees must request an application from MBUSI's Medical Department and then submit to the Medical Department a completed application, a certification signed by a physician, objective medical documentation, and an executed HIPAA compliant medical release. (*Plt. Dep. Ex.* 15; *Burbank Decl.* 14; *Olive Dep.* at 18, 27; *Olive Dep. Ex.* 1.)

determined that his condition was non-emergent. As a result, Plaintiff's STD leave application was delayed until a later date.

MBUSI communicated the delay with Simmons and offered to accommodate him at work by allowing him to wear his cast boot, not walk, and keep his leg elevated at his desk. (Doc. 34-2 at 58, 113–14.) Additionally, MBUSI informed Simmons that he must return to work by August 15; however, Simmons did not return to work. As a result, on August 20, 2018, MBUSI notified Simmons via letter that his employment was terminated.

On December 27, 2019, Simmons filed a two-count complaint (doc. 1), alleging both disability discrimination and racial discrimination arising from his denied STD leave application and termination. Simmons contends that, if MBUSI had accommodated his disability with STD leave or remote work, he would have been able to perform the essential functions of his employment. Simmons identifies Kathy Norris, Randall, Mike McGraff, the contractor employees, and Niko as comparator employees who were extended such flexibility. (Doc. 34-2 at 150–57.)

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). In making such a determination, this Court

must consider all the facts and draw all inferences in the nonmoving party's favor. *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). This Court does not weigh evidence at the summary judgment stage. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Instead, the Court views all the evidence and determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### III.   Count I - ADA Claim

The ADA bars employers from discriminating against "qualified individuals" because of an actual or perceived disability. *See 42 USC § 12112*. To avoid summary judgment on an ADA claim, a plaintiff must first establish a prima facie case under the *McDonnell Douglas* framework. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). A plaintiff must establish: "(1) [plaintiff] is disabled; (2) [plaintiff] is a qualified individual; (3) [plaintiff] was subject to unlawful discrimination because of [plaintiff's] disability." *Id.* Thereafter, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action. *Guash v. Carnival Corp.*, 723 Fed. Appx. 954, 956 (11th Cir. 2018). If the defendant can provide a permissible reason, the burden shifts back to the plaintiff to establish that the defendant's reason is merely pretextual. *Id.*

The parties do not dispute that Simmons is disabled within the meaning of the ADA. Instead, elements two and three are at issue: whether Simmons is a "qualified individual" within the meaning of the ADA and whether he was discriminated against. In establishing element three, whether an employee was discriminated against, "an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly v. Clairson Industries L.L.C.*, 492 F.3d 1247, 1361 (11th Cir. 2007). Therefore, if Simmons can prove element two, he will be able to prove element three unless MBUSI can establish undue hardship.

### A. Simmons Cannot Establish a Prima Facie Case Because He was Not a "Qualified Individual."

A "qualified individual" is a person who "with or without reasonable accommodation, can perform the essential functions of the employment position." *42 USC § 12111 (8)*. MBUSI presents two reasons why Simmons is not a qualified individual within the meaning of the ADA. First, MBUSI contends that Simmons is precluded from arguing that he is a "qualified individual" based on his representations to the Social Security Administration (SSA) that he is "totally disabled." (*See* Doc. 34-3; Ex: 3, 4.) Second, MBUSI asserts that no reasonable

6

accommodation was available that would enable Simmons to perform the essential functions of his employment.

    i. <u>Simmons' Representations to the SSA Indicate He is Not a "Qualified Individual."</u>

Undoubtedly, representations to the SSA do not foreclose the possibility of a successful ADA suit. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) ("[A]n ADA suit claiming that the plaintiff can perform her job with reasonable accommodation may well prove consistent with an SSDI claim that the plaintiff could not perform her own job (or other jobs) without it."). However, a plaintiff must proffer a "sufficient explanation" for the inconsistency between simultaneously claiming total disability to the SSA yet alleging he can perform the essential functions of his employment in an ADA claim. *Id*. at 806 ("[A]n ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.").

Simmons has failed to offer a sufficient explanation. To explain the inconsistency between his SSA claim and the allegations in the case at bar, Simmons suggests that he was only "totally disabled" because MBUSI did not offer him a reasonable accommodation. He testified that he could not work "in that present state" but "if there had been some type of accommodation…in terms of possibly that [he] could work from home" or take STD leave, then he hoped he could have

resumed work. (Doc. 34-2 at 140–41.) However, Plaintiff's explanation falls short because, for the reasons stated below, neither STD leave nor remote work would have been a reasonable accommodation. Thus, Simmons was unable to perform the essential functions of his employment.

As such, this Court finds that Simmons is precluded from claiming he is a "qualified individual" within the meaning of the ADA based on his representations to the SSA.

    ii.  <u>Simmons Was Not a "Qualified Individual" Because No Reasonable Accommodation was Available That Would Enable Him to Perform the Essential Functions of His Employment.</u>

Ignoring Simmons' representations of total disability to the SSA, Simmons is not a "qualified individual" because no reasonable accommodation was available for him. A "reasonable accommodation" is an accommodation that allows the employee "to perform the essential functions of" the employment position. *Earl*, 207 F.3d at 1365. To identify a potential accommodation, the ADA and its corresponding regulations contemplate an "interactive process" between employers and disabled employees. 29 C.F.R. § 1630.2(o)(3). An employee's failure to engage in the interactive process precludes that employee from "challeng[ing] his employer's failure to accommodate his disability." *Cooke v. Carpenter Tech. Corp.*, No. 5:19-CV-00115-AKK, 2020 WL 6562359, at *6 (N.D. Ala. Nov. 9, 2020) (citing *Stewart v.*

*Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997)). Simmons suggests that either work from home or STD leave would have been a reasonable accommodation. For independent reasons, this Court finds that neither were available to Simmons.

> a. *Simmons Failed to Properly Request Work from Home as a Reasonable Accommodation.*

An employer's obligation to provide a reasonable accommodation "is not triggered unless a specific demand for an accommodation has been made." *Adigun v. Express Scripts, Inc.*, 742 Fed. Appx. 474, 476 (11th Cir. 2018) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)). A request for an accommodation is sufficient when it puts the employer on notice of the employee's "limitations and desires." *Id*. at 477.

While Simmons contends in his reply brief that he was denied the reasonable accommodation of remote work, he is precluded from making that argument as he failed to make such a request with MBUSI. In his deposition, Simmons indicates that he "broached the subject" of remote work with his supervisor before his unapproved absences. (Doc. 34-2 at 142–43.) However, in subsequent testimony, Simmons contends that no conversation with his supervisor got to the point of discussing remote work. *Id*. at 140–42. His counsel adopts the later position, indicating that the conversations with Simmons's supervisor "never got [as] far" as discussing remote

work. (Doc. 38 at 17.) Most significantly, Simmons indicated that "the conversation never got to the point of allowing him to try to work from home." (*Id.* at 3.) Therefore, because Simmons never requested remote work from his employer as a reasonable accommodation, he cannot now suggest that remote work should have been offered. However, even if Simmons had properly requested remote work as an accommodation, his own testimony confirms that he would not have been able to do his job remotely during the launch periods in the summer of 2018. (*See* Doc. 34-2 at 59, 144–46.) Thus, remote work would not be a reasonable accommodation, even if properly requested, as Simmons could not perform the essential functions of his employment remotely.

b. *STD Leave was Not a Reasonable Accommodation.*

Simmons also suggests that MBUSI should have granted his STD leave as a reasonable accommodation. Conversely, MBUSI contends that Simmons rejected the only viable reasonable accommodation—wearing his cast boot to work, remaining stationary at his desk, and keeping his leg elevated. (*See* Doc. 34-2 at 58, 113–14; *see also* Doc. 34-1 at 2.) Further, MBUSI suggests that short-term leave would not have been a reasonable accommodation because physical presence was an "essential function" of his employment at the time of his termination. (*See* Doc. 34-5 at 2-3.)

The ADA and its corresponding regulations encourage employers and employees to engage in an "interactive process" to find a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o)(3); *see also Cooke*, No. 5:19-CV-00115-AKK, 2020 WL 6562359, at *6. If the parties suggest differing accommodations, an employer is not required "to provide the employee with [his] desired accommodation, only a reasonable one." *Everett v. Grady Memorial Hosp. Corp.*, 703 Fed. Appx. 938, 946 (11th Cir. 2017).

This Court need not evaluate whether MBUSI's proffered accommodations of stationary work and leg elevation were reasonable because, as discussed below, a leave of absence was clearly not reasonable in Simmons's circumstance. Because STD leave was not a reasonable accommodation, MBUSI faces no ADA liability for failure to grant a leave of absence. *See Davis v. Florida Power & Light Co.*, 205 F.3d 1301, 1306–08 (11th Cir. 2000) (affirming summary judgment in the employer's favor where the requested accommodation was unreasonable).

Indisputably, circumstances exist in which a leave of absence is a reasonable accommodation. *E.g.*, *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). In assessing whether a leave of absence is reasonable, the duration of the leave requested and the likelihood of an employee's ability to return to work matter significantly. *See*, *e.g.*, *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1235–26 (11th Cir.

1997) (concluding that an employee's request for two months of leave was not a reasonable accommodation where the employee would be unable to perform the essential functions of his employment either presently or "in the near future").

A leave of absence is not reasonable where the employee has a permanent, chronic condition. *E.g.*, *Wood*, 323 F.3d at 1314 (holding that because there was no indication the plaintiff could resume work, an indefinite leave of absence for cluster headaches was not a reasonable accommodation). Moreover, even in cases of temporary disability, a leave of absence is not a reasonable accommodation when a plaintiff's return date is indefinite. *Billups v. Emerald Coast Utilities Authority*, 714 Fed. Appx. 929, 935 (11th Cir. 2017). In *Billups*, an employee was injured on the job which required surgery. The employee participated in post-surgery physical therapy; however, it was not clear when he would be able to return to work without limitations. After exhausting his paid leave options, the employee requested to go on unpaid leave; instead, his employer terminated his employment. The employee's termination was not violative of the ADA because "at best, there was a possibility, but no certainty, that [the employee] could return to work." *Id.* at 935. Therefore, because the employee could not perform the essential functions of his position in the present or immediate future, unpaid leave was an unreasonable accommodation, as a matter of law. *Id.*

Simmons does not dispute that "after July 18, 2018, there was no way Plaintiff, nor his attending physician, knew [if the accommodation] would allow Plaintiff to return to MBUSI and perform his job." (*See* Doc. 33 at 15; *see also* Doc. 38 at 3.) Thus, Simmons recognizes that his absence from work was indefinite, as even before the unsuccessful surgery, his ability to return to work was uncertain. As such, Simmons is comparable to the employee in *Billups* because "at best, there was a possibility, but no certainty, that [he] could return to work." *Billups*, 714 Fed. Appx. at 935. Therefore, STD leave was not a reasonable accommodation for Simmons.

Simmons has failed to establish that he was denied a reasonable accommodation that would have enabled him to perform the essential functions of his employment. As such, Simmons is unable to make the requisite showing that he was a "qualified individual" within the meaning of the ADA or that MBUSI discriminated against him based on his disability in violation of the ADA. Therefore, MBUSI is entitled to summary judgment as to Count I, the ADA claim.

### B. Even if Simmons Could Make a Prima Facie Case, MBUSI's Reasons for its Conduct Were Not Pretextual.

Even if Simmons made a prima facie case of disability discrimination, MBUSI has provided legitimate, nondiscriminatory reasons for its actions. MBUSI contends that it could not provide leave or a remote work option to Simmons because, at the time of his leave application, MBUSI was in the middle of the product launch for

three vehicles. (*See* Doc. 34-5 at 5, 7; *see also* Doc. 34-2 at 92.) The launches created "one of the busiest times in the RampUp Logistics Department" that required "every RampUp Logistics Team Member to be present at the plant." (Doc. 34-5 at 2.) No member of Simmons's department was working extensively from home during those months. (Doc. 34-5 at 3.) As such, MBUSI contends that it denied Simmons's STD leave application for business needs—not disability animus. After Simmons failed to return to his place of employment, MBUSI terminated his employment due to his unapproved absences. Simmons has not rebutted either legitimate reason for MBUSI's conduct.

      i. <u>Simmons has failed to rebut MBUSI's reason for delaying his STD leave application.</u>

Staffing needs may be a legitimate, non-discriminatory reason for an employer's conduct. *See*, *e.g.*, *Winnie v. Infectious Disease Assocs., P.A.*, 750 F. App'x 954, 962 (11th Cir. 2018). Because MBUSI has provided a legitimate reason for its decision to delay his STD leave application, Simmons must establish that the reason is merely pretextual, meaning "the reason is both false and that the underlying discriminatory reason is impermissible." *Guash v. Carnival Corp.*, 723 Fed. Appx. 954, 956 (11th Cir. 2018). Simmons has established neither element of pretext as to MBUSI's decision regarding his application.

First, Simmons has pointed to no evidence showing that MBUSI's reason for denying his STD leave was not due to staffing needs within the RampUp Logistics Department. Second, Simmons has not pointed to any convincing evidence that MBUSI acted upon disability animus. Simmons claims that his supervisor "appears to hold . . . [his] second surgical request [against him] and appears to doubt it was necessary." (Doc. 38 at 14.) To further support his claim of disability animus, Simmons offers one email from his supervisor to the medical office personnel. (*Id.*; *see also* Doc. 39-1; Ex: 1.) However, this Court has read the cited email and finds that no reasonable jury could find animus. The email discusses Simmons need for a second surgery and the timing of the surgery. (*Id.*) But there is no discussion that hints of disability animus.

Simmons also suggests that another upper management employee held his absence in 2017 against him. (Doc. 34-2 at 66, 75–76, 82.) However, this employee was not an ultimate decisionmaker regarding whether Simmons was granted leave. (Docs. 34-5 at 4 & 34-7 at 30.) *See also Lewis v. Metro. Atlanta Rapid Transit Auth.*, 343 F. App'x 450, 453 (11th Cir. 2009) (emphasizing that when assessing whether a proffered reason is pretextual, the "relevant inquiry" focuses on the motivations of the "ultimate decisionmaker"). As such, Simmons has failed to demonstrate that MBUSI's reasons for its conduct were pretextual.

Simmons contends that MBUSI's STD leave policy is itself discriminatory because the policy requires supervisor approval for non-emergent leave. However, this Court does not operate as a "super-personnel department," evaluating the wisdom of MBUSI's leave policies. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013). So long as employers make business judgments for non-discriminatory reasons, this Court is not inclined to "second-guess the business judgment of employers." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). Therefore, MBUSI is entitled to set the specifics of its STD leave policy as it chooses, so long as the policy allows for disabled employees to obtain reasonable accommodations. MBUSI's leave policy, as described previously, is clearly not at odds with the ADA. As such, MBUSI's adherence to its STD leave policy was not discriminatory.

> ii. <u>Simmons has failed to rebut MBUSI's legitimate reason for terminating his employment.</u>

Unexcused absences may be a legitimate, non-discriminatory reason to terminate an employee's employment. *See*, *e.g.*, *Agee v. Mercedes-Benz U.S. Int'l, Inc.*, 646 F. App'x 870, 876 (11th Cir. 2016). Because MBUSI has provided a legitimate reason for Simmons's termination, Simmons must establish that "the reason is both false and that the underlying discriminatory reason is impermissible." *Guash*, 723

Fed. Appx. at 956. Simmons has established neither element of pretext as to MBUSI's decision to terminate his employment.

First, Simmons has pointed to no facts within the record that suggest the reason for his termination, unapproved absences, was false. Instead, Simmons seems to agree that his termination was related to his continued absence from his place of employment and failure to provide proper justification for such absences. (*See* Doc. 38 at 19 ("Simmons was terminated on August 20 for failing to submit, 'objective medical information' to support why he was out and need to be out.")) Second, Simmons has provided this Court with no evidence that discriminatory intent was the actual reason for his termination. While Simmons suspects that his supervisors doubted the legitimacy of his injury (doc. 38 at 14.), "mere suspicion" does not create an inference of discriminatory intent sufficient to establish pretext. *Tamba v. Publix Super Markets, Inc.*, 836 F. App'x 765, 772 (11th Cir. 2020). Thus, Simmons has failed to rebut MBUSI's legitimate reason for his termination.

For the foregoing reasons, MBUSI is entitled to summary judgment as to the ADA claim.

## IV.   Count 2 - Title VII Racial Discrimination Claim

Under Title VII and Section 1981, an employer may not discharge or otherwise discriminate against an employee because of race. *See 42 U.S.C. § 2000e-2 (a) (1)*; *see*

*also 42 U.S.C. § 1981*. To establish a Title VII claim, a plaintiff may proffer either direct or circumstantial evidence of discrimination. *Jefferson v. Sewon America, Inc*, 891 F.3d 911, 920 (11th Cir. 2018). Direct evidence of discrimination consists of "only the most blatant remarks, whose intent could mean nothing other than to discriminate." *Rojas v. Florida,* 285 F.3d 1339, 1342 n. 2 (11th Cir.2002) (quoting *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir.1999)).

Because Simmons neither offers nor contends there was direct evidence of racial discrimination, this Court must evaluate whether he has produced sufficient circumstantial evidence of racial discrimination. This Court evaluates the sufficiency of circumstantial evidence under either the *McDonnell Douglas* framework or "convincing mosaic" framework. *See*, *e.g.*, *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013) (explaining that the *McDonnell Douglas* framework is not "the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case" as the plaintiff can also "present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination"). Simmons fails to meet his burden under either analysis.

### A. Simmons Cannot Satisfy the *McDonnell Douglas* Framework.

Under the *McDonnell Douglas* framework for racial discrimination, Plaintiff must establish a prima facie case of discrimination by showing "(1) that [Plaintiff]

belongs to a protected class, (2) that [Plaintiff] was subjected to an adverse employment action, (3) that [Plaintiff] was qualified to perform the job in question, and (4) that [Plaintiff's] employer treated "similarly situated" employees outside [Plaintiff's] class more favorably." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220 (11th. Cir. March 2019) (citing *Holifield v. Reno*, 115 F.3d 1555, 1561–61 (11th Cir. 1997)). The first two elements are not at issue because the parties recognize that Simmons was an African American whose leave application was delayed and whose employment was ultimately terminated. Thus, this Court need only determine if there is a genuine dispute of material fact regarding Simmons' qualifications and whether MBUSI treated similarly situation employees outside Plaintiff's class more favorably.

If Simmons makes a prima facie case of discrimination, a rebuttable presumption of discrimination arises and the burden shifts to MBUSI to provide a legitimate, nondiscriminatory reason for its conduct. *Alvarez*, 610 F.3d at 1264. If MBUSI does so, the burden returns to Simmons to show that MBUSI's proffered reason was not the true reason and that MBUSI's conduct was based on animus. *Id; see St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

i.  <u>Simmons was not qualified to perform the job in question</u>.

An employee is "qualified for the position" if the employee "satisfied an employer's objective qualifications." *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769 (11th Cir. 2005). The parties' disagreement regarding whether Simmons is qualified is grounded in whether he could have performed his job with a "reasonable accommodation." *See 42 USC § 12111(8)*. As discussed above, Simmons could not perform his job because there was no reasonable accommodation available that enabled him to perform the essential functions of his employment. As such, Simmons was not qualified.

ii.  <u>Simmons has failed to establish that MBUSI treated "similarly situated" members of protected classes better than his own.</u>

Even assuming Simmons was qualified to perform his job, Simmons cannot establish that MBUSI treated other "similarly situated employees" within a different class better than him. A "similarly situated employee" outside the plaintiff's class, also called a "comparator," must not differ from the plaintiff in "material respects." *Lewis*, 918 F.3d at 1224. "Material" differences between employees might be that the employees engage in different conduct, are subject to different policies, or have different work histories. *Id.* at 1228.

In his deposition testimony, Plaintiff contends that he "heard" or he "knows" that two colleagues in his department were allowed to work from home or

20

were able to take more flexible leave. (Doc. 34-2 at 150–57.) However, he could not identify a coworker, in a similar situation, who was treated better. Specifically, Simmons could not identify a coworker who could continually work from home during the product launch in the summer of 2018. (*Id.*) Regarding his termination, Simmons also fails to establish that other individuals were treated better than him in his circumstance. Specifically, Simmons cannot identify a coworker who, like him, was denied STD benefits and refused to work but, unlike him, was not terminated. (*See id.* at 161–64.) Thus, this is not comparator evidence.

Simmons also mentioned several employees who he perceived were treated more favorably than himself, including Mike McGraff, Kathy Norris, "Niko," some contractor employees, and "Randall." (Doc. 34-2 at 150–57.) However, this Court finds that none of the proffered colleagues were "similarly situated" in "material respects" to Simmons. *Lewis*, 918 F.3d at 1224.

There are material differences between these colleagues and himself. First, none of the employees with which Simmons attempts to establish a comparator were on disability leave or continuously working from home during the product launch, which was an especially busy time at the plant. (Doc. 34-2 at 150–57.) The employer's circumstances at the time of its decision may be a relevant consideration regarding whether employees are "similarly situated." *See, e.g., Anderson v. WBMG-*

*42*, 253 F.3d 561, 566 (11th Cir. 2001) (indicating the differing supervisors may be a legitimate reason for differing treatment between the protective classes and is a relevant factor to whether employees are "comparators"). Therefore, the "comparator employees" Simmons proffers are different from him in a material respect—none took their leave during "one of the busiest times" at the plant that required "every . . . Team Member to be present." (Doc. 34-5 at 2.)

Second, none of the proffered "comparator employees" served in a similar role at the plant as Simmons. The department within which an employee belongs or the policies an employee is bound by are relevant factors in determining whether employees are comparators. *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1308–09 (11th Cir. 2018) (finding that employees were not comparator employees because they worked in different departments); *see also Lockheed-Martin Corp.*, 644 F.3d at 1326–27 (finding employees were not comparators because they were subject to different policies). Simmons worked in the RampUp Logistics department as an MRP/analyst, which is a very different job than the job of the contractors and of Niko, who was a Project Manager. Even Kathy, who worked in the same department as Simmons, has a job that differed from Simmons's job in material ways because she did not have suppliers: managing suppliers was an essential aspect of Simmons's job.

Therefore, Simmons cannot make a prima facie case of discrimination. As a result, MBUSI is entitled to summary judgment as to the racial discrimination claim.

> iii. Even if Simmons made a prima facie case of racial discrimination, he has failed to rebut MBUSI's legitimate, non-discriminatory reasons for its conduct.

Even if Simmons could make a prima facie case of racial discrimination, MBUSI has offered a legitimate, non-discriminatory reason for his discharge: Plaintiff failed to report to work when his absence was unapproved. Thus, the burden returns to Simmons to establish that MBUSI's offered reasons were mere pretext.

Simmons has failed to establish that MBUSI's reason for delaying his STD leave application was pretextual. It is undisputed that MBUSI has clear policies regarding STD leave applications, which MBUSI adhered to in making its decision regarding Simmons's leave application. (Doc. 34-2 at 125-26.) Simmons has pointed to no evidence that rebuts that the business needs of his employer, during one of its busiest times, was the motivating reason for delaying his application.

Moreover, Simmons has not established that his termination was pretextual or violative of company policies. It is undisputed that Simmons was absent from work for over a month without approval. (*Id.* at 51.) Unapproved absence is a violation of MBUSI's policies and a cause of termination unrelated to race.

Simmons cannot satisfy the *McDonnell Douglas* framework, as he cannot identify comparators or show pretext.

### B. Simmons Cannot Establish a "Convincing Mosaic" of Circumstantial Evidence.

An employee may survive summary judgment if a jury may infer intentional discrimination from a "convincing mosaic" of circumstantial evidence. *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). An employee may establish a convincing mosaic through evidence such as "(1) 'suspicious timing, ambiguous statements..., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id*. (quoting *Silverman v. Bd. Of Educ. Of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011)). Simmons has not painted a "convincing mosaic" of discrimination from circumstantial evidence.

Simmons bears the burden of creating "an inference of discriminatory intent" as to his employer's conduct. Lewis, 934 F.3d at 1185. He has offered no evidence to create such an inference regarding MBUSI's decision to deny his STD leave application or his termination. Simmons has not suggested that anyone made racially insensitive comments or engaged in racially insensitive conduct during his time at

24

the plant. Moreover, Simmons has not indicated that anyone at MBUSI said or did anything that was remotely racially insensitive. Simmons has not met his burden of creating "an inference of discriminatory intent" and this Court finds that Simmons has not presented a "convincing mosaic" of racial discrimination as to survive a motion for summary judgment. Thus, MBUSI is entitled to summary judgment as to the racial discrimination claim.

## V.    Conclusion

The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on September 20, 2021.

L. Scott Coogler
United States District Judge

206888

25